## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| OLANDRA L. BLEVINS KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | CIVIL ACTION NO: |
| | ) | 2:18-cv-095-TMP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION

### Introduction

The plaintiff, Olandra L. Blevins Kennedy, appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. (R. 75, 137-46), and a period of disability and disability insurance benefits under Title II of the Act. (R. 15). After the Social Security Administration denied her applications, Kennedy obtained a hearing before Administrative Law Judge ("ALJ") Perry Martin. (R. 775-799). ALJ Martin subsequently found that Kennedy is not disabled within the meaning of the Act. (R. 12-28). Next, Kennedy

requested administrative review of the ALJ's Decision (R. 135-36) but the agency's Appeals Council denied her request. (R. 1-10). Kennedy timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the full dispositive jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Kennedy was 38 years old at the time of the ALJ's decision (R. 12), and has completed one-and-a-half years of college. (R. 201, 780-81). Kennedy's past relevant work experience is as a nursing assistant, a cashier, and a check cashier. (R. 795-96). She first claimed that she became disabled on January 1, 2014, then amended the alleged onset date to April 1, 2014. (R. 778, 784). Kennedy claims that she became disabled due to scoliosis, hypertension, irritable bowel syndrome, depression, and anxiety. (R. 17, 200).[1]

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If

---

[1] Although her brief in this court asserts that she alleged pain as an impairment, the record before the ALJ does not contain an allegation of pain as a distinct impairment.

she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Kennedy has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (R. 20). First, the ALJ determined that Kennedy meets the insured statutes requirements of the Social Security Act through March 31, 2015. (R. 17). Second, the ALJ found that Kennedy has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date.[2] (R. 17). Third, according the to the ALJ, Kennedy's scoliosis, obesity,

---

[2] It is not clear whether the ALJ meant to make this finding back to January 1, 2014, or whether it is a scrivener's error. The claimant amended her date of onset to April 1, 2014, which would

4

hypertension, irritable bowel syndrome, depression, and anxiety are considered "severe" based on the requirements set forth in the regulations. (R. 17). Fourth, the ALJ determined that Kennedy "does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments" in the regulations. (R. 18). Fifth and finally, the ALJ found that Kennedy "has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) . . . ." (R. 20). However, the ALJ found that she should only "occasionally push or pull with her upper and lower extremities"; she "cannot climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs." (R. 20). Kennedy may also "occasionally balance, kneel, crouch, stoop, and crawl"; but she "must avoid concentrated exposure to extreme heat, cold, and concentrated exposure to vibration." (R. 20). "Additionally, the claimant should have no exposure to hazardous machinery or unprotected heights. During a regularly scheduled workday, or the equivalent thereof, the claimant can understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions." (R. 21). The ALJ continued that Kennedy "is able to do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks." (R. 21). Further, Kennedy "can

---

make it the relevant date. The ALJ's reference to January 1, 2014, is harmless error because it would encompass the amended date as well.

have no more than occasional contact with the general public" and "can deal with changes in the workplace, if the changes are introduced occasionally and gradually, and are well explained." (R. 21).

Next, the ALJ determined that Kennedy "is unable to perform any past relevant work" and that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . ." (R. 27).[3]

## Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to

---

[3]  Based on the testimony of a vocational expert, the ALJ found that the plaintiff could perform the jobs of dowell inspector, hand painter, and packager. The total of these three jobs amount to about 30,000 positions in the national economy and about 450 in Alabama. (R. 797). The ALJ found as a fact that these were a significant number of jobs. *Cf. Brooks v. Barnhart,* 133 F. App'x 669, 671 (11th Cir. 2005) (affirming finding that 840 jobs in the national economy was a significant number of jobs).

support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997)). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**Discussion**

Kennedy alleges that the ALJ's decision should be reversed and remanded because: (1) the ALJ failed to properly consider the opinion of Dr. Craig, Kennedy's treating physician, and (2) the ALJ failed to properly consider Kennedy's pain pursuant to the Eleventh Circuit's Three-part Pain Standard. (Doc. 12, p. 9).

A brief discussion of Kennedy's medical history is necessary in order to put the ALJ's decision into context. Kennedy developed scoliosis as a child and underwent surgery to implant a Harrington rod. (R. 466, 789-90). Kennedy visited the emergency room in late 2012 complaining of episodes of anxiety and withdrawal due to running out of her anxiety medication. (R. 292, 296). On July 7, 2013, Kennedy visited the emergency room complaining of abdominal pain. (R. 300). She underwent surgery that same day to remove an inflamed ovary. (R. 307-08). Kennedy appeared at the emergency room several times after her surgery complaining of constipation. (R. 316-24). Kennedy was first prescribed Percocet 10-325mg after her surgery by Dr. Rodriguez. (R. 314). Kennedy visited the emergency room multiple times between January 9, 2013 and February 22, 2014 complaining of anxiety, hypertension issues, and pain. (R. 326-43).

On April 26, 2014, Dr. May examined Kennedy for the purpose of providing information for a state disability determination. (R. 357). Dr. May reported that

Kennedy was able to walk normally, squat, and has a slightly limited range of motion in her legs. (R. 360). Further, Dr. May opined that Kennedy's irritable bowel syndrome was likely due to her use of narcotics and "did not sound very significant." (R. 361). Dr. May recommended no restrictions for Kennedy based on her scoliosis. (R. 361).

Dr. Waltz performed a psychological evaluation of Kennedy on May 2, 2014. (R.363). Dr. Waltz reported that Kennedy is able to understand and carry out instructions, respond to supervision and pressures in her work environment, but may benefit from vocational or social skills training. (R. 365-66). Dr. Waltz concluded that Kennedy is "moderately impaired." (R. 365).

In July of 2014, Kennedy complained of a significant increase in back pain and was referred for an MRI. (R. 470). After the MRI, Dr. Poczatek concluded that there was no evidence of canal or neural stenosis and that Kennedy's medication allowed for full participation in daily activities. (R. 474). Dr. Poczatek also referred Kennedy for pain management. (R. 474).

In August of 2014, Kennedy visited the emergency room saying that she had taken about 21 Percocet to help her relax after running out of her anxiety medicine. (R. 651). In February of 2015, Kennedy again visited the emergency room

complaining of mental health problems. (R. 678). In March of 2015, Kennedy sought emergency treatment for problems with hypertension. (R. 703).

On March 27, 2015, Kennedy underwent another MRI that revealed a bulging disk at L4-L5. (R. 585). Kennedy then received steroid injections in her back in April and May of 2015. (R. 491-92). She reported that while the injections provided immediate relief, she experienced no lasting pain relief or permanent improvement. (R. 497). On June 10, 2015, Kennedy complained of increased pain due to a car accident on June 1. (R. 484-87). Dr. Craig noted that she was "doing great" after her injection and that he would prescribe pain medication for the car accident. (R. 484-87). Dr. Craig reported that the plaintiff had returned to her baseline pain level and that he planned to refer her to pain management. (R. 487). In August of 2015, Kennedy expressed that chronic opioid treatment is very effective, and Dr. Craig continued her pain medication because she had an appointment with a chronic pain management doctor. (R. 584).

Dr. Craig submitted a survey provided by Kennedy's lawyer that indicated Kennedy in fact had an underlying condition consistent with her pain, and that she was limited in respect to reaching, pushing or pulling, bending, and stooping. (R. 503-05). Dr. Craig estimated that the plaintiff can sit for three hours and stand for two hours in a typical workday. (R. 503). He also estimates that she may only lift

"5 pounds occasionally or less." (R. 503).  Dr. Craig also noted that the preceding

assessment "Requires [a] Functional Capacity Examination." (R. 503).

## 1. Proper Consideration of Dr. Craig's Opinion

It is well established under Eleventh Circuit law that the opinion, diagnosis,

and medical evidence of the plaintiff's treating physician should be accorded

substantial weight unless "good cause" is shown for not doing so. *Crawford v.*

*Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997); *Edwards v.*

*Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Swindle v. Sullivan*, 914 F.2d 222,

226 n. 3 (11th Cir. 1990); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The weight to be afforded a medical opinion regarding the nature and severity of a

claimant's impairments depends, among other things, upon the examining and

treating relationship the medical source had with the claimant, the evidence the

medical source presents to support the opinion, how consistent the opinion is with

the record as a whole, and the specialty of the medical source. *See* 20 C.F.R.

§§ 404.1527, 416.927(d).[4]  "Good cause" exists for an ALJ not to give a treating

physician's opinion substantial weight when the "(1) treating physician's opinion

was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

[4] The regulation set forth in 20 C.F.R.  §§ 404.1527(c) notes that a treating doctor's opinion on
the "nature and severity" will be given "controlling weight" where it is "well-supported by
medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with
other medical evidence and that the longer the treatment relationship has existed, the more
weight the opinion is entitled to receive.  Both of these factors weigh heavily in favor of giving
Dr. Craig's opinions "controlling weight."

. . . was conclusory or inconsistent with the doctor's own medical records."

*Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d

at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)

(holding that "good cause" exists where the opinion was contradicted by other

notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual

functional capacity, and the application of vocational factors "are not medical

opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;"

thus the court "may not decide facts anew, reweigh the evidence, or substitute [its]

judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005). The court instead looks to the doctors' evaluations of the

claimant's condition and the medical consequences thereof, not their opinions of

the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440; *See also*

20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are

'disabled' or 'unable to work' does not mean that we will determine that you are

disabled."). Such statements by a physician are relevant to the ALJ's findings, but

they are not determinative, because it is the ALJ who bears the responsibility of

assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R.

§ 404.1546(c). It follows that the opinions of reviewing, non-examining

physicians, when contrary to those of examining physicians, are entitled to little weight. *Lamb v. Bowen*, 847 F.2d 698 (11th Cir.1988); *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ may ignore the opinion of the treating physician regarding disability only if the opinion is so brief and conclusory that it lacks persuasive weight or is unsupported by any clinical or laboratory findings. *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir.1986); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983).

Kennedy argues that the ALJ failed to properly consider the opinion of Dr. Craig expressed in the Physical Capacities Evaluation form (R. at 503) because the ALJ gave Dr. Craig's opinion "some weight" as opposed to substantial weight. (Doc. 12 p. 7-8). The standard for considering a treating physician's opinion is set forth in *Hunter*:

> "Although the testimony of a treating physician is generally entitled to 'substantial or considerable weight,' the ALJ may discount that testimony when there is 'good cause.' Good cause exists 'where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.' We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822–23 (11th Cir. 2015) (internal citations omitted) (finding that the ALJ properly discounted a treating

physician's opinion that the ALJ found inconsistent with medical records and other evidence).

Here, the ALJ stated "I assign Dr. Craig's opinion some weight." (R. 25). The ALJ noted that the Dr. Craig is an orthopedic specialist, but discounted Dr. Craig's opinion because Dr. Craig "did not indicate if or what records he reviewed in making his final opinion." (R. 25). Dr. Craig's opinion is "somewhat consistent with the assessed residual functional capacity, with the exception of the lifting and sitting limitations . . . ." (R. 25). The ALJ's importation of Dr. Craig's recommendations into the ALJ's residual functional capacity conclusion evidences that some weight was given to the opinion of Dr. Craig. (*See* R. 24-25). Moreover, the document relied on by Kennedy does not indicate that Dr. Craig reviewed Kennedy's medical records when making a recommendation. (R. 503-05). Indeed, Dr. Craig wrote in the margin of the form "Requires Functional Capacity Evaluation," seemingly suggesting that additional information was need to validate the opinions in it. Also, in the Clinical Assessment of Pain contained in the survey, Dr. Craig refused to offer an opinion about the extent, intensity, and limiting effects of the plaintiff's pain. He wrote, "Pain is a subjective phenomenon. I am unable to answer this questions." (R. at 504). He did indicate that side effects of the plaintiff's medications would be present but "not to such a degree as to create

serious problems in most instances." (R. at 505). While it would be logical to assume that Dr. Craig reviewed the medical records in his own possession when completing the form, Dr. Craig may have relied on his personal knowledge of Kennedy's condition. Further, according to the record Dr. Craig's last personal contact with Kennedy was July 10, 2015; more than a month before Dr. Craig completed the survey on August 26, 2015.[5] (R. 487, 503). Moreover, Dr. Craig did not treat the patient during the most of the relevant period her claimed disability. The ALJ could have logically thought that Dr. Craig's unspecific conclusion contributed to a lessening of the weight it was due in his consideration. (R. 484-505).

In sum, credibility conclusions are left for the ALJ and a reviewing court will only disturb the conclusions of an ALJ where "good cause" does not exist. *See Hunter*, 808 F.3d at 822–23. Because the ALJ imported parts of the Dr. Craig's assessment into the ALJ's RFC conclusion and specified the evidentiary problems

---

[5] Although not stated by the ALJ as a reason for according only "some weight," the court notes that the form was completed and signed after March 31, 2015, the date the claimant was last insured. In fact, the earliest medical record indicating treatment of the plaintiff by Dr. Craig is dated March 25, 2015, only days before the date the plaintiff was last insured. In that examination, Dr. Craig noted that the plaintiff "is ambulatory without support," had "equal and symmetric" deep tendon reflexes, "good strength," and negative straight leg raising tests. (R. at 582). An MRI performed on March 27, 2015, noted "[s]ignificant dextro scoliosis," but was otherwise essentially normal except for a "bulging disc" on the right side at the L4-L5 level. Even there, the "neural foramina [were] normal." (R. at 585). The medical observations made by Dr. Craig after March 31, 2015, however, are certainly chronologically relevant to the determination of disability before that date.

with Dr. Craig's opinion, the ALJ stated "good cause" for giving Dr. Craig's opinion only "some weight." (R. 24-25; *see Hunter*, 808 F.3d at 822-23).

## 2. Proper Consideration of the 3 Part Pain Standard

Kennedy alleges that the ALJ failed to consider Kennedy's reported pain properly. (Doc. 12, p. 9). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in

the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

While the ALJ did not explicitly state and consider the three-part pain test, the ALJ correctly considered the objective medical evidence in light of Kennedy's subjective complaints of pain. (R. 21-26). First, the standard requires that the ALJ consider "evidence of an underlying medical condition." *See Dyer*, 395 F.3d at 1210. Here, the ALJ explicitly considered evidence of Kennedy's scoliosis. (R. 21-22). The ALJ noted that both MRIs "revealed significant dextro scoliosis of the thoracic spine and a slight disc bulge at L5-S1, but without significant central spinal stenosis neural foraminal stenosis." (R. 22). By explicitly considering objective medical evidence of Kennedy's scoliosis the ALJ satisfied the first step of the Eleventh Circuit Pain Test.

Next, the Pain Test requires that the ALJ consider "either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d at 1210. If the ALJ does not find the claimant's claims of subjective pain convincing in conjunction with an examination of the objective medical evidence, the ALJ must articulate "explicit and adequate reasons" for discrediting the claimant's complaints of pain. Soc. Sec. Rul. 96-7p, 1996 WL 374186, *1 (1996).

With respect to the second prong, the ALJ noted that Kennedy's doctors reported that "the claimant is able to ambulate without assistance, able to perform her activities of daily living, demonstrates normal range of motion, and was often negative for back pain." (R. 22). The ALJ also explicitly considered the findings from Dr. Boohaker's consultative examination. (R. 22). Specifically, Dr. Boohaker reported that Kennedy was in no acute distress, had the ability to get on and off the exam table with ease, had a normal range of motion throughout including her lumbar spine flexion. (R. 22). Additionally, the ALJ noted that after Kennedy "was involved in a motor vehicle accident . . . she subsequently presented with normal

gait . . . ." (R. 22). Finally, the ALJ noted that "diagnostic studies did not reveal a severely worsening condition" after the car crash. (R. 22).

Kennedy asserts that the ALJ's failure to find a disability based on the evidence of subjective pain in the record should be overturned because "the medical evidence of the record documents underlying medical conditions confirmed by examinations and diagnostic testing, and both treating and examining physicians have noted known symptom indicators suggesting significant and debilitating symptoms." (Doc. 12, p. 11). Kennedy lists the results of the two MRIs showing significant dextro scoliosis of the thoracic spine, Kennedy's Harrington Rod, bulging disk, idiopathic scoliosis, lumbar degenerative disc disease, thoracic radiculitis, and epidural steroid injections as support for reversal of the ALJ. (Doc. 12, p. 10-11). Kennedy also asserts that Dr. Craig's report should be considered as well. However many of these same conditions were explicitly considered as part of the ALJ's analysis. (R. 21-22). This court cannot say that the ALJ failed to consider the second prong of the Pain Test, "objective medical evidence that confirms the severity of the alleged pain arising from that condition . . . ." *Dyer v. Barnhart*, 395 F.3d at 1210. The ALJ made specific statements citing the above-noted objective medical evidence, yet determined that Kennedy did not meet the disability standard. In particular he determined that the

medical evidence was inconsistent with the plaintiff's own statements about er

daily activities. The ALJ noted that the plaintiff's own statements (both in the

"Function Report-Adult" and her testimony at the hearing before the ALJ)

regarding her daily activities indicated that she could bathe and care for herself and

her five-year old child, and that while her husband performed most household

chores, she can shop for groceries and cook light simple meals. She watches

television, talks to friends, and attends church. She is able to drive a car, with a

pillow as back support. In light of the ALJ's analysis of the objective medical

records and after a full review of the record the court finds that the ALJ's

determination is supported by substantial evidence.

Regarding the third prong, the ALJ determined that the objective medical

evidence was of such a severity that could reasonably be expected to give rise to

the pain. (R. 21). It was not the ALJ's failure to consider the third prong of the

pain test that formed the basis for a finding of no disability. (R. 21-22). Instead,

the ALJ reached his decision based on the lack of credibility in the plaintiff's

claims regarding the intensity, persistence, and limited effects of her pain (*See* R.

21-22). The ALJ and Kennedy differ on how the weight of the evidence. The

ALJ's method of analysis takes into account the objective medical evidence in the

record with regard to pain and therefore satisfies the Eleventh Circuit Three-Part

Pain Test. (R.22). Based on the explicit considerations noted in the ALJ's opinion, the court cannot say that the ALJ failed to take into account Kennedy's objective medical evidence when evaluating claims of subjective pain.

## Conclusion

Upon review of the entire administrative record, and considering all of Kennedy's arguments, the undersigned Magistrate Judge finds the Commissioner's decision is supported by substantial evidence; therefore, the decision is AFFIRMED. By separate Order the court will dismiss this action with prejudice.

DATED the 15th day of May, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE